[No. 15728.   Department Two.   September 13, 1920.]

M. E. ZIOMKO, *Respondent*, v. PUGET SOUND ELECTRIC RAILWAY, *Appellant*.[1]

STREET RAILROADS (19)—INJURY TO PERSON ON TRACKS—DUTY TO STOP, LOOK AND LISTEN. One entering upon the track of an interurban railway, the service of which was in the nature of a street car service, is not imperatively bound by the rule of "stop, look and listen," as when crossing or entering upon the tracks of a railway engaged in a through service where stops are made only at fixed stations.

SAME (30)—COLLISION WITH VEHICLE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether the driver of a vehicle upon a city street, struck by an interurban railway train, was guilty of contributory negligence was a question for the jury, where it being necessary to turn to the left onto the tracks to pass around an automobile parked at the curb, he looked back when two hundred feet away and saw no train approaching, and later, upon starting to turn his horse, he looked again and saw a train running backwards and almost upon him, too late to avoid being struck, and the operators of the train had notice of his danger in time to have stopped,

[1]Reported in 192 Pac. 1009.

and no bell was rung or warning given of the approach of the train.

APPEAL (413)—REVIEW—VERDICT. Where the verdict is supported by evidence in kind or quantity such as the nature of the case requires, so that the question is one of mere preponderance of the evidence, and the trial court has refused to set the verdict aside, the supreme court will not interfere, even though it may believe that the verdict is against the weight of the evidence.

APPEAL (406)—REVIEW—DISCRETION—NEW TRIAL. Whether the trial court does or does not express his views on the weight of the evidence upon denying a motion for a new trial will not be a distinguishing factor on appeal, but the inquiry will be limited to the question whether the verdict is supported by substantial evidence.

STREET RAILROADS (30) — CONTRIBUTORY NEGLIGENCE — EVIDENCE— QUESTION FOR JURY There was sufficient evidence to make a question for the jury upon an issue as to whether an interurban train could have been stopped in time to avoid striking a vehicle, notwithstanding plaintiff's negligence, where it appears that the train was moving backwards slowly and could have been and was stopped within a few feet; that the conductor saw plaintiff and noticed his inattention and he attempted to warn plaintiff by means of a mouth whistle, but had means within his reach for stopping the train almost instantly, and which he used after the accident.

TRIAL (101)—INSTRUCTIONS—REQUESTS. The refusal to give requested instructions which could have been properly given is not error, where their substance, so far as material, was embodied in the instructions given by the court.

TRIAL (97)—INSTRUCTIONS—MATTERS NOT SUSTAINED BY EVIDENCE. In an action for personal injuries, it is not error for the court to recite, in a statement of the issues, the substance of the allegations of the complaint and the items of damage alleged to have been suffered by reason of the injury, though certain of the items were unsupported by evidence, where no request was made to enumerate the items which no evidence had been offered to sustain.

DAMAGES (82)—PERSONAL INJURIES—EXCESSIVE VERDICT. In an action for personal injuries sustained by the driver of a vehicle struck by an interurban train, which plaintiff claimed caused a rupture and partially prevented him from performing his customary labor, a verdict for $1,000 will not be held excessive, though it appears that the jury might well have found a lesser verdict.

Appeal from a judgment of the superior court for King county, Jurey, J., entered July 14, 1919, upon the

verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*James B. Howe* and *Hugh A. Tait,* for appellant.

*Edwin James Brown* and *John C. Bowen,* for respondent.

FULLERTON, J.—This is an appeal from a judgment entered in favor of the respondent and against the appellant in an action brought to recover for personal injuries. As in all such cases, there are in the record certain facts which are not in dispute. The appellant owns and operates an interurban railway between the city of Seattle and the city of Renton. As the passenger trains of the appellant leave Seattle, they are operated in the usual way until they enter Main street in Renton. At this point the trains are switched onto a wye, where they are turned and brought back to the main track, and from thence they are backed to the terminal depot in Renton, a distance of some four hundred or five hundred feet. Main street is paved between the wye and the terminal depot. The street between these points extends north and south. The pavement is fifteen and five-tenths feet in width between the east rail of the appellant's railway track and its outer edge, at which place it terminates with the usual curb. The accident out of which the controversy arises happened shortly prior to six o'clock in the evening of September 11, 1916, at a place between the wye and the depot. The respondent at that time was riding in a two-wheeled cart drawn by a single horse.

The evidence as to the manner and cause of the accident is divergent. The respondent's version is that, at the time of the accident, he was driving from his home to the depot at Renton for the purpose of meet-

ing his wife, whom he expected to arrive there at about that hour on one of the appellant's trains; that, when he reached Main street while on his way, he proceeded to drive at a walk on that part of the paved way lying to the east of the railway tracks; that he then saw a passenger train consisting of a motor coach and a trailer standing on the wye mentioned; that, as he proceeded on his way and was approaching the depot, he noticed an automobile parked on that side of the street between the curb and the railway tracks; that he was then some two hundred feet from the automobile, and realizing that he would have to turn onto the railway tracks to pass around it, looked back to see if a train was approaching and saw none; that, as he came near the automobile, he turned his horse to the left with the intention of passing around it, when he again looked for an approaching train and saw a train almost upon him; that he immediately stopped his horse and backed from the track, and, while he succeeded in clearing the horse from the front of the train, he was not so successful with the cart, which was struck by the car and one of its wheels crushed, the jolt throwing him to the pavement and causing the injuries for which he sued. His testimony further tended to show that the train as it approached was running backwards; that it was drifting, that is, moving without the application of power, and that no bell was rung, whistle blown, or gong sounded to give warning of its approach. His evidence also tended to show that the operators of the train had notice of his perilous situation in time to have stopped the train before striking him.

The appellant's version of the happening of the accident is that, as its train approached the respondent, he was driving on the side of the track between it and the curb, leaving ample room for the train to pass

him in the clear; that the train reached him before he had reached the parked automobile standing in the roadway; that the front end thereof passed both the cart and the horse before the cart was struck, and that the striking was caused because the horse became frightened, turned around and backed the cart into the moving train.

After the return of the verdict of the jury, and before judgment had been entered thereon, the appellant moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The trial court denied the motions, and the first error assigned is the refusal of the court to set aside the verdict and enter a judgment for the appellant.

In support of this assignment the appellant contends that the respondent was guilty of contributory negligence, as matter of law. The contention is based on the fact that the respondent turned his horse upon the railway tracks, when he reached the parked automobile. before looking for an approaching train. Many cases from this court are called to our attention where somewhat similar acts on the part of pedestrians and vehicle drivers were held to be so, and argue with force that respondent's acts bring him within the rule. But we think it unnecessary to enter upon a review of the cases. Whether the court can say in a particular case the injured party was guilty of negligence, as matter of law, must depend upon the facts of the particular case. Precedents are usually but illustrative of the general principle, and are authoritative only where the facts are like or so far similar as to be indistinguishable. Here there was an element not found in the cited cases. It will be remembered that the respondent, while only a short distance from the place where he made the turn towards the tracks, and when he discovered that such a turn was going to be neces-

sary, did look for an approaching train. It must be remembered, also, that the service in which the appellant's trains were engaged was in the nature of a street car service, and that in such a service the rule of stop, look and listen before entering upon its tracks is not imperatively necessary, as it is when crossing or entering upon the tracks of a railway engaged in a through service where stops are made only at fixed stations. The question whether the respondent was guilty of contributory negligence was, we think, a question on which reasonable minds might reasonably differ, and being so, it was a question for the jury, not the court.

Among the grounds upon which the motion for a new trial was based was the statutory ground of insufficiency of the evidence to justify the verdict, and it is urged that the trial court erred in refusing to grant a new trial on this ground. When the question of the sufficiency of the evidence to justify a verdict is presented to a trial court, that court is undoubtedly warranted, under our practice, in viewing the question from a two-fold aspect; that is to say, it may inquire whether the verdict is supported by evidence in kind or quantity such as the nature of the case requires, or it may inquire into the preponderance of the evidence, and grant or refuse to grant a new trial as its conclusions thereon dictate. While the rule is not the same in all jurisdictions, it is our rule that we will review a judgment founded on the verdict of a jury for insufficiency of the evidence only in a case of the first sort mentioned. If, for illustration, the trial court should enter a judgment upon the verdict of a jury founded on the testimony of one witness only where the law required two or required the witness to be corroborated, or should enter a judgment on a verdict founded on evidence of an oral contract where the

law required the contract to be in writing, plainly this court on appeal would reverse the judgment, even though the objection below was in the form of a motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict. But where the verdict is supported by evidence sufficient in kind and quantity so that it is a question of mere preponderance of the evidence, and the trial court has refused to set the verdict aside, this court will not interfere, even though it may believe that the verdict is against the weight of the evidence. True, we have discarded the scintilla-of-evidence doctrine, and have held that evidence sufficient to support a verdict must be substantial—that is, of such a character that men of reasonable prudence and caution would act thereon in matters of their own concern—but this is not to say that the question is to be tested by weighing the evidence supporting the verdict with the evidence on the other side. Here, we are convinced, there was substantial evidence sufficient to support the verdict. Contrary to the appellant's contention, we cannot conclude that the respondent's account of the manner in which the accident happened is inherently improbable, or inconsistent with the physical facts shown, or that it is otherwise legally insufficient. The question, therefore, being one of mere preponderance of the evidence, we cannot interfere with the verdict without an abuse of power.

In passing upon the motion for a new trial, the trial judge, while he denied the motion, expressed the opinion that the verdict was contrary to his view of the weight of the evidence. The appellant argues that, having this view of the evidence, it was his imperative duty to grant a new trial, and that this court must hold that it was an abuse of discretion on his part not to do so. Our cases on this question, it must be con-

fessed, are not consistent. The cases which most directly support the contention are *Tacoma v. Tacoma Light & Water Co.,* 16 Wash. 288, 47 Pac. 738; *Miller v. Dumon,* 24 Wash. 648, 64 Pac. 804; and *Johnson v. Domer,* 76 Wash. 677, 136 Pac. 1169. Cases to the contrary are: *Suell v. Jones,* 49 Wash. 582, 96 Pac. 4; *Columbia etc. Rafting Co. v. Hutchinson,* 56 Wash. 323, 105 Pac. 636; *Kincaid v. Walla Walla Valley Traction Co.,* 57 Wash. 334, 106 Pac. 918, 135 Am. St. 982; *Franey v. Seattle Taxicab Co.,* 80 Wash. 396, 141 Pac. 890; *Payzant v. Caudill,* 89 Wash. 250, 154 Pac. 170, and *Hendrickson v. Smith,* 111 Wash. 82, 189 Pac. 550. The reasons for the varying rules are stated in the cited cases and need not be repeated here. It is sufficient to say that we are now convinced that no distinction should be made in our inquiry, whether the court does or does not express his views on the weight of the evidence, but that we should in each instance, where the motion is denied, limit our inquiry to the question whether the verdict is supported by substantial evidence.

The court gave to the jury the following instruction:

"The court instructs the jury that the defendant is liable in this case if its servants failed to use ordinary care to prevent the injury of the plaintiff after they became aware of the danger to which he was exposed, or after they might have become aware thereof by the exercise of ordinary care, and by ordinary care is meant such care as would be ordinarily used by prudent persons performing a like service under similar circumstances; and the court further instructs the jury that if they believe from the evidence that defendant's conductor or motorman saw the plaintiff in time to avoid injury to him by using ordinary care, and that said conductor or motorman failed to use such care to prevent injury to the plaintiff, then the jury will find for the plaintiff."

It is argued that there is no evidence in the record to support the theory here suggested, and hence error to give the instruction. But we think there was evidence in the record from which the jury could well have found that the injury could have been avoided had the servants of the appellant exercised ordinary care after they discovered the respondent's danger. The train was moving slowly and could have been stopped, and was actually stopped after the accident, within a very few feet. The conductor was on the forward car in a place where he could see ahead of the train. He saw both the standing automobile and the respondent approaching it, and noticed the respondent's inattention to the approaching train. While the train was not equipped with any whistle, bell or gong within the conductor's reach, he was so much impressed with the situation that he attempted to warn the respondent by other means—a "mouth whistle"— but did not succeed in attracting the respondent's attention. The conductor had, however, within his reach means for stopping the train almost instantly, and this he used after the accident. Seemingly, in the light of these conditions, it is not too much to say that the jury were warranted in finding that the conductor did have an opportunity to avoid the accident by the exercise of ordinary care. We are clear that it was a question for the jury, and consequently cannot hold the instruction complained of erroneous.

It is complained, further, that the instruction is erroneous in that it entirely wipes out the defenses of contributory and concurrent negligence, and places no duty on the part of the respondent to exercise care for his own safety. But the rule is that:

"Contributory negligence of a party injured will not defeat his action, if the defendant or its servants might

by reasonable care and prudence have discovered his peril in time to save him, and thus have avoided the consequences of the injured party's negligence. In such a case the plaintiff's alleged contributory negligence could not be said to be the direct and proximate cause of the accident, but the defendant's negligence would be the proximate cause and would thus render it liable." Nellis on Street Railways (2d ed.), § 462. *Locke v. Puget Sound Int. R. & P. Co.,* 100 Wash. 432, 171 Pac. 242, L. R. A. 1918 D 1119.

Complaint is made of the refusal of the court to give certain requested instructions. These we shall not review at length. Most, if not all of them, could have been properly given, but their substance, in so far as they were material, was embodied in the instructions actually given by the court. It is not the rule that every requested instruction which could be properly given must be given. If the jury are properly and fully instructed upon the controlling principles of law involved the rule is satisfied. Here the instructions were full and complete, and even if the requested instructions involved matters not within the given instructions, the refusal to give them was without prejudice, and hence without error.

In its charge to the jury the court, in stating the issues, recited the substance of the allegations of the complaint, and in the recital stated the items of damage the respondent alleged he had suffered by reason of his injury. Some of these items there was no evidence at all to substantiate, and others again were proven, if proven at all, only in part. The court was not requested and did not in its charge enumerate the items which no evidence had been offered to sustain, but by instructions more or less general left it for the jury to say which of the items the evidence tended to establish and to what extent they were established

thereby.   This is assigned as error, but we cannot conclude that it is so.   Under the practice in this state, when there is no evidence tending to support certain of the items going to make up the demand of a party, the court may properly so instruct the jury, whether requested to do so or not, and where a request therefor is made, it is probably its duty so to do.   But the court, need be no more diligent than is the party.   In the absence of a request he may properly leave the questions to the jury.   *Eggleston v. Seattle*, 33 Wash. 671, 74 Pac. 806; *Tribble v. Yakima Valley Transp. Co.*, 100 Wash. 589, 171 Pac. 544; *Zolawenski v. Aberdeen*, 72 Wash. 95, 129 Pac. 1090.

Finally, it is contended that the verdict is excessive. The amount of the recovery was $1,000.   After the accident the respondent was found to have a rupture, which he claimed was the result of the injury and which he testified partially incapacitated him from performing his ordinary and customary labor.   The respondent introduced expert evidence to the effect that it was highly improbable that the injury could have caused the rupture, and introduced evidence of his neighbors and acquaintances to the effect that he had performed his ordinary labor much as he was wont to do prior to his injury.   But the evidence on all these questions was contradictory, and while it appears to us that the jury might well have found a lesser verdict, we cannot say their finding is so far in excess of a just finding as to warrant interference therewith.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, TOLMAN, and BRIDGES, JJ., concur.